UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-20534-CR-UNGARO/SIMONTON

UNITED STATES OF AMERICA,

    Plaintiff,

v.

VIVENS DELORME, et al.,

    Defendants.
_____/

### AMENDED ORDER GRANTING GOVERNMENT'S MOTION TO DISQUALIFY
### (amended to correct typographical error)

This matter arose upon the Government's Motion to Disqualify Appointed Attorney (DE # 158). The Honorable Ursula Ungaro, United States District Judge, referred this matter to the undersigned United States Magistrate Judge. The defendant filed a "preliminary" response in opposition (DE # 165). A hearing was held on December 23, 2008, at which time the undersigned granted the Government's motion, and appointed Terrance Lenamon, Esq. as new counsel for Mr. Delorme. This Order incorporates by reference the facts and reasons set forth on the record at that hearing.

I. **BACKGROUND**

Defendant Vivens Delorme is charged in a two-count Indictment with conspiracy to use interstate facilities to commit murder for hire and the substantive offense of using interstate facilities to commit murder for hire, in violation of 18 U.S.C. § 1958(a). The Indictment contains special findings to support the imposition of the death penalty, although at this stage of the proceedings the government has not yet made a decision regarding whether the death penalty will be sought. The victim of the alleged murder was a government witness against Delorme in a then-pending narcotics trafficking case.

Defendant Delorme made his initial appearance in court on these charges on

August 7, 2008. Based upon Mr. Delorme's inability to retain counsel, on September 3, 2008, Paul Petruzzi, Esq. was appointed to represent him.

## II. THE GOVERNMENT'S MOTION TO DISQUALIFY

The Government now seeks to disqualify Mr. Petruzzi based upon an unwaivable conflict of interest resulting from Mr. Petruzzi's prior representation of a significant government witness who is expected to testify at trial against Mr. Delorme. The material facts are undisputed, and the parties agreed that there was no need for an evidentiary hearing.

Mr. Petruzzi represented the witness in connection with charges that were then pending against the witness in a federal criminal case. The representation began on September 7, 2004, after the witness entered a guilty plea and prior to the sentencing. Mr. Petruzzi stated at the hearing that his agreement was to represent the witness until the witness was released from prison. Mr. Petruzzi represented the witness at the sentencing, and in connection with a motion to reduce his sentence based upon cooperation with the government. The witness ultimately was sentenced to serve 60 months in prison, followed by five years of supervised release. He was released on August 18, 2008. Mr. Petruzzi's last meeting with the witness prior to the date of the presently filed motion was on or shortly before that date. Mr. Petruzzi stated that he considered his representation terminated as of that date. As described in more detail below, the witness still considers Mr. Petruzzi to be his attorney.

In December 2007, the witness was incarcerated with Mr. Delorme. At that time, a newspaper article was published concerning the murder of the victim in the case at bar. The witness called Mr. Petruzzi and told Mr. Petruzzi that he had a conversation with Mr. Delorme in which Mr. Delorme admitted his involvement in the murder. Mr. Petruzzi

2

retrieved information about the case from PACER, and then called government counsel and advised him of this information.  Government counsel conveyed this information to the case agent, but did not follow up on it at that time.  The first direct contact by the Government with this witness in connection with this case occurred on December 2, 2008, when a subpoena for trial was served on the witness, and the witness asked what was in it for him to testify, and told the agent serving the subpoena that he was going to call his attorney, Paul Petruzzi, Esq.  Government counsel then reviewed notes in his file and discovered that the initial information from this witness had been conveyed by Mr. Petruzzi.  At the hearing, Mr. Petruzzi stated that his conversations in December 2007 with the witness and with government counsel had been extremely brief, and that he had not recalled this event until reminded of it by government counsel.

The government has not promised any benefit to the witness in exchange for his testimony, but the witness may hope for a benefit with respect to his term of supervised release or his immigration status, since he is not a United States citizen.  The witness has advised both Mr. Petruzzi and the government that he will not waive a conflict of interest and will not consent to Mr. Petruzzi's representation of Mr. Delorme in the present case.

### III. DEFENDANT'S RESPONSE TO THE MOTION TO DISQUALIFY

Defendant Delorme filed an expedited preliminary response in opposition to the motion to disqualify.  At the hearing, Mr. Petruzzi stated that the preliminary response was filed based upon his conversations with both clients immediately after an initial status conference with the undersigned Magistrate Judge, based on the recognition that depending on the results of the December 23, 2008 hearing, a further response might be appropriate.  In this response, Mr. Delorme contended that there was no concurrent

representation of clients with conflicting interests since Mr. Petruzzi's representation of the witness had terminated on August 18, 2008, when the witness was released from incarceration, and Mr. Petruzzi's representation of Mr. Delorme did not begin until September 3, 2008.  Defendant Delorme contended that Mr. Petruzzi's current representation of him could not be adverse to the witness.  Mr. Petruzzi alleged in the motion that he was not aware of any confidential information shared with him by the witness that could be used in cross-examination during Mr. Delorme's trial.

At the hearing, Mr. Petruzzi recognized that he would be ethically prohibited from cross-examining the witness during Mr. Delorme's trial, and that he was also prohibited from attempting to discredit the veracity of the witness' testimony through other witnesses.

The court personally addressed Mr. Delorme regarding this conflict at the hearing. Mr. Delorme had completed two years of college, was not under the influence of drugs or alcohol, and had discussed this matter with Mr. Petruzzi.  He wanted to waive the conflict because he had confidence in Mr. Petruzzi and believed that Mr. Petruzzi would "represent him to the fullest" extent possible.  He did not want Mr. Petruzzi to be disqualified because he was concerned about the competence and quality of the attorney who would be appointed to replace Mr. Petruzzi.  Mr. Delorme agreed, however, that if he was satisfied that a competent and well-qualified attorney was appointed to replace Mr. Petruzzi, it would be better.

Based upon the present posture of this case, and the fact that the Department of Justice was presently deliberating over whether to authorize death penalty proceedings, the undersigned reviewed the present CJA roster and the roster for the following week to determine if any of the attorneys on the roster were experienced with respect to death

penalty cases.  Mr. Petruzzi advised the Court that Terrance Lenamon, Esq., who was on the second week, had significant death penalty experience.  Therefore, the Court called Mr. Lenamon during the hearing to determine his availability.  After this call, Mr. Petruzzi and Mr. Delorme were given the opportunity to consult, and Mr. Delorme advised the Court that he was satisfied with the appointment of Mr. Lenamon.  Based upon the posture of this case, and to permit present counsel to fully brief Mr. Lenamon on the discovery and the status of various pending matters, and because the Criminal Justice Act, 18 U.S.C. § 3005, permits the appointment of two counsel in death penalty cases, the undersigned determined that it was appropriate to permit a one-week overlap (which included the Christmas holiday) for the representation provided by Mr. Petruzzi and Mr. Lenamon.  Therefore, Mr. Lenamon's appointment was effective immediately, and Mr. Petruzzi's appointment was terminated effective December 30, 2008.

    IV.    LEGAL ANALYSIS

Although the undersigned finds that, at the conclusion of the above hearing, defendant Delorme agreed that disqualification was appropriate, the following legal analysis demonstrates that even if Delorme had not agreed to the substitution of counsel, disqualification would be required in the case at bar.

At the outset, the Court notes that the Sixth Amendment right to counsel encompasses the right to counsel of choice, and that courts should hesitate to override this presumptive right by disqualifying counsel.  The undersigned assumes that this applies even where counsel of choice has been court appointed.

 In *Wheat v. United States*, 486 U.S. 153 (1988), the United States Supreme Court addressed the circumstances under which disqualification of criminal defense counsel is appropriate.  The Supreme Court held that a District Court may disqualify a criminal

defendant's counsel of choice based upon a showing of a serious potential for conflict of interest, even where the defendant and the affected co-defendants/potential witnesses sought to waive the right to conflict-free counsel. In reaching this result, the Court emphasized that, "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." 486 U.S. at 159. At the outset of its analysis, the Court noted that a defendant could not insist upon an advocate who was not a member of the bar, nor could "a defendant insist on an attorney who had a previous or ongoing relationship with an opposing party, even when the opposing party is the Government." 486 U.S. at 159. From this starting point, the Court reasoned that disqualification could also occur based upon the independent interest of the federal courts "in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." 486 U.S. at 160. The Court recognized that "[n]ot only the interest of a criminal defendant but the institutional interest in the rendition of just verdicts in criminal cases may be jeopardized by unregulated multiple representation." 486 U.S. at 160. Thus, the Court rejected the claim that the provision of waivers by all affected defendants automatically cured the conflict presented by multiple representation.

In upholding the decision of the District Court in *Wheat* to refuse to permit counsel who represented co-defendants to also represent defendant Wheat, the Supreme Court recognized the difficulty of assessing, in the pre-trial setting, whether the multiple representation would result in an actual conflict of interest at trial:

> [W]here a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver,

6

and insist that defendants be separately represented. As the Court of Appeals for the Third Circuit stated in *United States v. Dolan,* 570 F.2d 1177, 1184 (1978):

> [W]hen a trial court finds an actual conflict of interest which impairs the ability of a criminal defendant's chosen counsel to conform with the ABA Code of Professional Responsibility, the court should not be required to tolerate an inadequate representation of a defendant. Such representation not only constitutes a breach of professional ethics and invites disrespect for the integrity of the court, but it is also detrimental to the independent interest of the trial judge to be free from future attacks over the adequacy of the waiver or the fairness of the proceedings in his own court and the subtle problems implicating the defendant's comprehension of the waiver.
>
> Unfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. . . .
>
> For these reasons we think the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.

486 U.S. at 162-63.

In *United States v. Ross*, 33 F.3d 1507 (11th Cir. 1994), the Eleventh Circuit applied the rationale of *Wheat* to uphold the disqualification of counsel under circumstances which involved the successive, rather than simultaneous representation by counsel of persons with conflicting interests. There, defendant's counsel of choice had previously

7

represented a Government witness in a related criminal case. That representation ended when the previous client entered into a plea agreement. Under these circumstances, the Eleventh Circuit held that the District Court had not abused its discretion in refusing to accept the defendant's waiver of the right to conflict-free counsel.

In reaching this result, the Eleventh Circuit stated that the disqualification determination is based upon a balancing of the right of a defendant to be represented by counsel of choice and the right to a defense conducted by an attorney free from conflicts of interest. The Court provided the following analysis to be used in arriving at the appropriate balance:

> The need for fair, efficient, and orderly administration of justice overcomes the right to counsel of choice where an attorney has an actual conflict of interest, such as when he has previously represented a person who will be called as a witness against a current client at a criminal trial. When an actual conflict of interest exists, the client is denied effective assistance of counsel, and the attorney may be disqualified. Indeed, even a potential conflict suffices for disqualification. . . .
>
> . . . . If the conflict could cause the defense attorney improperly to use privileged communications in cross-examination, then disqualification is appropriate. Indeed, it is also true that disqualification is equally appropriate if the conflict could deter the defense attorney from intense probing of the witness on cross-examination to protect privileged communications with the former client or to advance the attorney's own personal interest. In short, the court must protect its independent interest in ensuring that the integrity of the judicial system is preserved and that trials are conducted within ethical standards.

33 F.3d at 1523 (citations omitted).[1]

---

[1] The Eleventh Circuit has frequently examined the allegation by a convicted defendant that counsel was ineffective based upon counsel's prior representation of a government witness. These cases demonstrate, as pointed out by the Supreme Court in *Wheat*, that a present waiver does not foreclose the later claim of ineffective assistance of counsel based upon events that occurred at trial, and the difficulty of assessing
(continued...)

Similarly, in *United States v. McCutcheon*, 86 F.3d 187 (11th Cir. 1996), the Eleventh Circuit affirmed the decision of the District Court which disqualified counsel on the grounds that he had previously represented a co-defendant who intended to offer an entrapment defense that would inculpate McCutcheon. At the time of the disqualification, McCutcheon and the co-defendant were scheduled for a joint trial, and the district court denied the request for a severance, which McCutcheon claimed would alleviate the conflict. The co-defendant refused to waive the conflict, and the District Court refused to accept a waiver of the conflict by McCutcheon. Although ultimately the trials were severed, and the co-defendant did not, in fact, testify even at his severed trial, the Eleventh Circuit held that the District Court had not abused its discretion in disqualifying counsel, based upon the state of the record as it existed at the time of the disqualification order. In reaching this result, the Eleventh Circuit reiterated the need for the court to protect the fair, efficient and orderly administration of justice, which overcame the defendant's qualified Sixth Amendment right to counsel of choice.

Likewise, in *United States v. Miranda*, 936 F. Supp. 945 (S.D. Fla. 1996), the Court disqualified counsel who had previously represented a government witness, finding that the present representation was substantially related to the prior representation of the witness, and that the interests of the cooperating witness, who sought to gain a reduction in his sentence as a result of cooperation, were adverse to the interests of the defendant. The Court also rejected the proposal that independent counsel be permitted

---

[1](...continued)
effective assistance of counsel in the pre-trial context. *See, e.g., Freund v. Butterworth*, 165 F.3d 839, 846-49, 858-69 (11th Cir. 1999) (*en banc*); *Porter v. Singletary*, 14 F.3d 554, 560-61 (11th Cir. 1994); *United States v. Rodriguez*, 982 F.2d 474 (11th Cir. 1993); *Lightbourne v. Dugger*, 829 F.2d 1012, 1022-24 (11th Cir. 1987); *Smith v. White*, 815 F.2d 1401, 1404-06 (11th Cir. 1987).

to conduct the cross-examination of that witness, with conflicted counsel conducting the remainder of the trial.  The Court concluded that this proposal would not be appropriate under the circumstances since it would not alleviate the "concerns with the public's perception regarding the fairness of the these proceedings and the integrity of the judicial process; and with the rights of [the witness previously represented]."  936 F. Supp. at 952.

Other courts have reached the same result.  In *United States v. Culp*, 934 F. Supp. 394 (M.D. Fla. 1996), the District Court disqualified defendant's counsel of choice who had previously represented two persons who would be Government witnesses against the defendant.  *Accord United States v. Cheshire*, 707 F. Supp. 235 (E.D. La. 1989).

In the case at bar, it is undisputed that Mr. Petruzzi previously represented the witness at the time that the witness first conveyed to the government (through Mr. Petruzzi) the information which will be the subject of his expected testimony in the case at bar.  For purposes of this motion, the undersigned assumes that Mr. Petruzzi's representation of the  ended on August 18, 2008, when the witness was released frm custody.

Having determined that an attorney-client relationship existed, the Court must next examine the rules of professional responsibility regarding when an attorney is prohibited from undertaking the representation of a successive client.  Rule 4-1.9 of the Rules Regulating the Florida Bar, which governs the permissibility of successive representation of clients, provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
>
> (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former

10

>client consents after consultation; or
>
>(b) use information relating to the representation to the disadvantage of the former client except . . . when the information has become generally known. For purpose of this rule, "generally known" shall mean information of the type that a reasonably prudent lawyer would obtain from public records or through authorized processes for discovery of evidence.

As numerous cases have recognized, this duty of loyalty requires disqualification when a former client seeks to cooperate with the government and testify against the present client. *See, e.g., United States v. Miranda*, 936 F. Supp. 945 (S.D. Fla. 1996); *United States v. Culp*, 934 F. Supp. 394, 398-99 (M.D. Fla. 1996); *United States v. Davis*, 780 F. Supp. 21 (D.D.C. 1991); *United States v. Chesire*, 707 F. Supp. 235 (M.D. La. 1989); *see also United States v. Cruz*, 982 F. Supp. 946 (S.D.N.Y. 1997) (disqualifying attorney when wife of former client was testifying as a government witness with the hope that the government would file a motion to reduce the husband's sentence based upon her cooperation).

Although the underlying criminal activities about which Mr. Petrtuzzi represented the witness are not the same activities which form the basis for the presently pending charges against Mr. Delorme, the undersigned concludes that these matters are substantially related. For a matter to be substantially related, the matters "need only be akin to the present action in a way reasonable people would understand as important to the issues involved." *Estate of Jones v. Beverly Health and Rehabilitation Services, Inc.*, 69 F. Supp.2d 1304, 1310 (M.D. Fla. 1999), *quoting*, *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1341, 1346 (5th Cir. 1981).

Mr. Petruzzi's representation of the witness was primarily focused on reducing the sentence that the witness would receive. In this connection, Mr. Petruzzi received the very information that this witness is expected to testify about in the case at bar. That

11

information was conveyed to the government by Mr. Petruzzi.  The witness still hopes to receive a benefit for providing that information.  Thus, there is a direct connection between the representation of the witness by Mr. Petruzzi and the present case.

The witness has not waived the conflict of interest, and Mr. Petruzzi cannot violate his duty of loyalty by seeking to discredit the witness.  The witness is expected to testify regarding a jailhouse confession, which, if believed, is highly incriminating.  Cross-examination of this witness, as well as other attempts to discredit the witness (for example in closing argument) are likely to be a significant feature of the trial.  The duty of loyalty will be violated not just because of the risk of disclosure of confidential information, but also because the actions of Mr. Petruzzi in zealously representing Mr. Delorme are directly adverse to the interests of his former client.  As stated by the Court in *United States v. Miranda*, 936 F. Supp. at 951-52, even the use of independent counsel in such circumstances will not alleviate the concerns related to the public's perception of fairness of the proceedings and the integrity of the judicial process, nor adequately protect the interests of the witness.

Thus, the undersigned concludes that disqualification is appropriate under Rule 4-1.9 of the Rules Regulating the Florida Bar.

In sum, the undersigned concludes that there is an actual conflict of interest and that Mr. Petruzzi's prior attorney-client relationship with the witness is such that permitting Mr. Petruzzi to represent Mr. Delorme in the case at bar would undermine Mr. Delorme's right to effective assistance of counsel, and the fairness and integrity of the proceedings to an extent that overrides Mr. Delorme's Sixth Amendment qualified right to counsel of choice.

Therefore, for the reasons stated above, it is hereby

**ORDERED AND ADJUDGED** that the Government's Motion to Disqualify (DE # 158) is **GRANTED**.  Attorney Paul Petruzzi, Esq. is terminated, effective December 30, 2008.  Attorney Terrance Lenamon, Esq. is appointed to represent Vivens Delorme, effective December 23, 2008.

**DONE AND ORDERED** in chambers in Miami, Florida on January 5, 2009.

*Andrea M. Simonton*
ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable Ursula Ungaro, United States District Judge
All counsel of record via CM/ECF